I think the key task here is to distinguish the results in Dillingham and Nunn, and that is easy to do. The reason why that's easy to do is because Oregon, unlike California, has chosen to require that employees participate in the administration of all state-recognized apprenticeship training programs. Well, I'm not exactly sure that's true. They require that the employee representative, so-called, actually has to be a skilled craftsperson. It doesn't say it has to be an employee of anybody or ever have been an employee of anybody. Is that right? I believe that's correct. I'd have to look at the statute itself. So, therefore, just to start the most basic point, without getting into all the complications of how LMRA applies to non-represented groups, at least under the definition of the National Labor Relations Act incorporated into the LMRA, there has to be an employee committee in which employees participate. There's no requirement that he be an employee. Is that right? Well, Your Honor, I would want to look again at the statute and make sure. My understanding was that, and has always been that, what happens is that the employees of the sponsors select an employee representative. Where does it say that? In fact, the record is to the contrary on that. The record says they can be chosen any old way, and usually they're chosen by the employer, is what the record actually says. I believe that the statute says, Your Honor, that they are – It doesn't say they're nominated. It doesn't say they're nominated. I think it says – does it not say nominated by the employees? If we can turn to the OARs also, Your Honor. Representatives of employees or employee organizations involved in research shall submit nominations for not less than two and more than four. So I don't know what that means, representatives of employees, because I don't know who they are if they're not represented. There's something in the record I know that says that. And then it says, for the purpose of these rules, an individual is eligible to serve as an employee representative only if he or she is a skilled practitioner in the occupation and does not serve in a supervisory capacity. It doesn't say anything about him being an employee. Well, Your Honor, it may be that there's a dispute of fact that was never addressed at any stage. I think we all went – What's a fact? What's in the statute? Well, I think we all went on the assumption that they are all employees, as a matter of fact, and that it was a result of these laws. I'm not aware of anything in the record that suggests that any employee representative on any JATC is not, in fact, an employee. And we do know that they're not in a supervisory capacity as defined, and so on and so forth. It's actually in the regulations. Yeah, you were reading from OIR 839.11.074B, I believe. Okay, go on, but that was just an observation. I don't see where it even says they have to be employees. Well, and, Your Honor, I'd be happy to go back and see if we can resolve that. So if that's something the Court desires, please let me know. Aside from that issue, I think it's clear under both ERISA that a JATC that has employee representatives on it is, as a matter of law, covered by ERISA. And the government's argument to the contrary is that that is not so unless they are union-affiliated employees or employee representatives. And there's nothing in any statute, nor in any case for that matter, that says that union affiliation matters. And, in fact, what ERISA says is that you're a covered program as a labor organization if you're a union or other employee organization. First of all, we know from the record that this is all ultimately relevant to whether or not the plans are funded. And the reason that matters is because Dillingham says only if they're funded are they covered. We know from the record that, in fact, a very large percentage of them, in fact, a much larger percentage than in California under Dillingham, are not funded. Is that correct? That is correct, Your Honor. So the first premise of your argument has to be is that what matters is not what is, in fact, true, but what would be true if somebody were to read the LMRA the way you're reading it and then enforce it. That's correct. I think the enforcement is what matters. I mean, Boley has said that, or the State has said that they don't care whether or not things are funded, but they don't have any obligation to enforce the LMRA or anything else. So conceptually, you have to be reading ERISA and Dillingham as turning not on what's, in fact, the case, as to whether the statute relates to funded plans because we know, in large part, it doesn't. But as to whether the people who are not funding the plans are violating some other statute that Oregon has no authority to enforce. Nor is it ERISA. It's neither one. Well, my answer to that is yes and no. I mean, I think it's clear that what matters is not whether or not the LMRA is in all instances enforced. The question is whether or not these programs are funded by or are covered by ERISA. And they are because they've got employee representatives on them. Now, subsidiary to that, I say that in Dillingham, where they discussed in a footnote whether or not, as a matter of fact, all of the programs were funded, they said, had somebody proven to us, as a matter of fact, that all were funded, we might have a different result. That seemed to me to be the substance of their footnote. So, in other words, if it had been true that, as a matter of law, they weren't required to be covered by ERISA, but, in fact, they were, then Dillingham might have reached a different result. But that is not the same thing as saying that, if, as a matter of law, under California law, they all had to be but turned out not to be covered by it. Well, Your Honor, I think that there is one case. And that case is... You're simply making a creative and interesting argument about how it might be applied, but not that ERISA replied in that way. Well, I think that there is a case that was cited in the brief, and I believe, actually, it is Cabot-Carbon, which is the Supreme Court's original case, in which the labor organization was not union affiliated. Which one is that? I think it's Cabot-Carbon, the United States Supreme Court case, upon which all the argument is based. So I don't think that that was explicitly discussed. They didn't say, you know, union affiliation doesn't matter. Wasn't that an 882 case? Pardon me? Wasn't that an 882 case? Not an LMRA case? Not an LMRA Section 302 case? No. Cabot-Carbon was the case in which they discussed whether or not somebody, whether or not something was an employee organization. But for purposes of 882 and not for purposes of this requirement of funding for a joint and trustee plan. No, I understand that. And I think that is correct. But the statute refers back to the exact same test. And so if you're an employee organization for one thing under the test, you're an employee organization for everything under the test, there's nothing in the statute at all that distinguishes the context under which. It's a definition. It reaches back. It says employee organization means what it means in this following statute. And that statute refers forward to I think it's 152. 152 has the definition of labor organization. And that's anybody who, you know, any organization in which employees participate and that deals with employers regarding those statutory factors. So I don't think that it matters in that sense what Cabot-Carbon was about. So the argument really isn't all that creative. It just says, even ERISA says, and it has the same exact test. It calls them employee organizations instead of labor organizations. An employee organization is a labor union or any organization that, you know, has employee participants and deals with and so on and so forth. So I think it's clear that all of the Oregon Joint Apprenticeship Training Committees have to be covered by ERISA. ERISA says so. The LMRA definitions say so. There's never been a case that says union affiliation matters. What there have been is cases under California law, and that would be Dillingham and Nunn, where the statute at issue, the California statute at issue, said you have to have employee representatives if there is a union affiliation. So naturally the courts in those cases talked about, especially in Dillingham, talked about the union affiliation. It said, well, if indeed that was the scope of California law, that it applies to joint apprenticeship training committees and so on and so forth, but the court was only talking about unions because that was what was relevant under California law. Now, in our case, that's not so. Our case says employee representatives have to participate in the administration. Technically it says representatives of employees. It uses, in fact, the same words as the statutes use. So it says representatives of employees have to participate in the administration of all joint apprenticeship training committees. So that's how we know that there's a reference to nothing but ERISA programs. The other aspect to distinguish Nunn and Dillingham has to do with the directness or indirectness. And we know that an indirect economic effect is not enough. That's what Traveler says. That's what Dillingham says. In this instance, as I understand it, this plan has existed. It's been training apprentices, and no one's been stopping it. So what you have is a set of incentives, which are basically, as I understand it, an exception for the prevailing wage for some purposes, some amount of state money and a piece of paper given to the apprentice, saying you're a graduate of a registered apprenticeship program. Is that basically accurate? No, Your Honor. There exists, separate from the statutes that are challenged, incentives to seek state recognitions. Other than the three I just gave you? No, those are the incentives that you have. But those aren't in the statutes that were challenged. In other words, we're not challenging the indirect incentives. Well, you can be challenging, because that's the only consequence of this rule, is that you don't get those three incentives. Well, the consequence is that you don't get state recognition. Now, there are incentives to seek it. And the consequences of not getting state recognition are the three that I just gave you. Yes, that is correct, Your Honor. So therefore, in judging whether this is direct or indirect or anything else, all you have to decide is whether the absence of those three incentives is sufficient to is any different than Dillingham, and it's basically the same as Dillingham, so how can it be different? Well, because the laws that are challenged here don't provide an incentive to anybody. What they do is they provide a disincentive to all second programs to seek recognition. They reach directly out to any program that's training apprentices. The ones that already exist to improve them instead of starting more and more programs so that apprentices have fewer job training opportunities and are less likely to finish the training. Well, apprentices have more job training opportunities if there's more programs. Why? Well, because there's a If people who are willing to train through your program have to be able to be allowed to train through existing programs because it's required that they be allowed to do that, then how are there more job training opportunities? Well, because there's a different program that does things differently in a different location, for example. In this case, the existing program is actually up in North Portland, but it covers They would have found a need, but they found there wasn't a need. I mean, that's a quibble with the application. It's not a quibble with the standard. You're saying they applied it wrong because there really wasn't a need. I agree. That's a substantive question that they could have and did not recognize, but the fact remains still that there's a different opportunity for apprentices, for example. But I don't think that that's particularly important in this case because I think that the connection is, it says, to people who are to have a second program. It doesn't give them an indirect incentive. It says, we are not going to recognize you unless, you know, for whatever reason you want to have your program. It says, we're not going to recognize you and give you whatever benefits you can achieve through that unless you go forward. Now, you know, I think ultimately the connection with test is not as clear in general and is certainly not as good a case for us as the reference to, because I think we can show that they're all ERISA programs. So the law says this applies to all JATCs, all JATCs are ERISA programs. So with that, I think that the important thing to get to is the question of the savings clause. And with the savings clause, getting rid of this needs basis for recognition under Oregon law will not change federal law and will not modify any regulation or alter or impair any regulation issued under the federal law. And that's simply because they're inconsistent. There's no needs-based requirement anywhere else. There's no needs-based requirement for that matter in many other states. So it's inconsistent with federal law and it's inconsistent with other state laws. And that is one of the core interests of ERISA is to get to the question of whether or not programs can be administered the same way in all places. So there's an additional requirement here. The additional requirement, if you invalidate it, doesn't impair the federal law or any regulation issued under it. So our position is that there's no saving of the needs-based requirements. I'm having a hard time seeing what your distinction is for the Connection 2 prompt. How this is different, for example, from the traveler's case in which undeniably there are incentives created to participate, for example, in one plan rather than another plan, which is what we have here, to participate in the existing plan rather than setting up your own plan. But there's still just incentives. No one's making you do anything. And, in fact, as I understand it, your client is not doing it. They're doing what they want to do. Well, they're not doing what they want to do in that they don't have recognition. They are having their own plan. They are not participating in that. They are. And the record before the district court supported that that can't last forever for the obvious reasons that you can't survive if you can't give the benefits to your employer sponsors that recognition gives. And that's because, obviously, eventually people are going to say, well, this is costing me money. This is costing me jobs. I can't even apply for a public works project in Multnomah County because Multnomah County says you can't apply unless 17% of your hours are by apprentices who are in a state-recognized program. So there are severe consequences. But I don't think that that's what makes the connection different. I mean, the incentives for becoming recognized are the same. And I think that that's plainly correct. But the laws that are challenged here are not laws that give any incentive at all. They are laws that say we, the state of Oregon, have decided that we are going to have essentially a state-sanctioned You will get exactly what the incentive was in the Blue Cross case and Travers case, i.e., you will do better to participate in X plan than in Y plan if you're an employer. That's right. You'll get a better deal, essentially, is what it is. That's exactly what was true in Travers, right? You're better off if you participate in X plan than Y plan if you're an employer. Right, but that is true. And I concede, and we have always conceded, that the incentives are the same. But we're not challenging the laws that provide An employer, an individual employer, can either participate in your plan without the incentives or participate in the existing plan with the incentives on behalf of his employees, his apprentices. Well, that's correct. But the effect on an employer is different from the effect on the plan. Let me try and put it this way. On that theory, I think Travers should have been concerned with the effect on the non-favorite plans, but it didn't seem to worry about that. Non-favorite plans were in the same position as you are. They were being disfavored. Well, Your Honor, what I think Travers, Dillingham, Nunn all said was that there's a lower limit to the connection to, and the lower limit is if all you have, all you can show is an indirect economic effect, then you're not going to be able to show a connection, an impermissible connection to. But it doesn't say that supposing there is an indirect economic effect to the statutory structure, but there's also a direct effect to the statutory structure, that those laws that have a direct effect are not going to be preempted. So that's why I say we're not challenging the laws that give an incentive to recognition. We're not saying that Oregon can't have a prevailing wage difference between apprentices and journeymen or anything of that nature. We're saying that Oregon can't require programs who want to become recognized from being recognized based on needs. I see my time is up, so if the Court has no further questions, I'll conclude there. May it please the Court, Erica Hadlock, on behalf of the Commissioner of the Oregon Bureau of Labor and Industries and the other state defendants, I want to draw back from the details of the analysis for a moment and just summarize in a nutshell what I think the plaintiff's position is and what it necessarily leads to. Dillingham and Nunn make it quite clear that ERISA does not preempt state apprenticeship laws, at least in those states like California, that permit employer-only apprenticeship training committees. Plaintiffs argue that ERISA does preempt Oregon's apprenticeship laws, at least those necessary and needed standards that they specifically attack here, because of one provision that differentiates Oregon law from California's, that Oregon requires that employees participate in the joint apprenticeship training committees. If plaintiff's theory is correct, it appears likely that two somewhat surprising results will follow. The first is that although plaintiffs challenge only the necessary and needed standards in this action, if they are correct that those laws relate to ERISA because they refer to ERISA plans, it could easily be argued that the same would be true of all of Oregon's state apprenticeship regulations. In other words, if plaintiffs prevail, all of Oregon's regulations governing the running of state-approved apprenticeship programs would be as vulnerable to an ERISA preemption attack as the necessary and needed standards that plaintiffs challenge here. The other result, because plaintiffs specifically say they do not challenge the portion of Oregon law that allows apprentices in state-approved programs to be paid less than journeyman wages, is that if their argument prevails in this case, they will gain the benefit of becoming state-registered apprenticeship training committees and will have the benefit that goes with that without having to meet the other standards that apply, the other standards that govern the necessary, excuse me, I lost track of my sentence, the other requirements that the state applies through the necessary and needed standards. For example, like not discriminating against union members. Is this just another version of your first point? If not, I don't understand it. Your first point is that there's a problem with the Oregon ERISA, the Oregon apprenticeship standards because of the jointness of the committee within the whole ERISA. All of the regulations don't. But how is the second point different? The second point, I guess, isn't different. It just points out maybe a little more starkly the irony of it. All you're saying is that if this goes, everything goes. If this goes, either everything becomes vulnerable to attack, or if just the necessary and needed standards go and not everything else, then plaintiffs get to become state-registered committees because the necessary and needed standards don't apply, but they still get the benefit of one of Oregon's other laws, the one they haven't challenged, which allows them to pay lower wages. So they either get to pick and choose, like they're trying to do here, or all of Oregon's apprenticeship training laws become vulnerable. And those are the two points I was trying to make. I had asked a question at the outset, whether the regulations or the statute actually require that any of the so-called employee representatives be employees. And I mentioned that I thought there was something in the record about that, and there is, which says, in practice, employers affiliated with nonunion clubs generally ask their jury-elected employees if they would like to serve in the committee, or if the employer specifically designated employees as nominees to serve as employees. Elections are occasionally held to designate nominees, that seems flatly inconsistent with what I'm about to say as to how these people are supposed to be chosen. But I guess the bottom line question is, is there any requirement for them to be employees? Let me answer the earlier question first. There is another section, if you read further down in the regulations, that talks about how employees get selected for the committee if employee representatives don't nominate them. So there is a provision. I think it's two subsections down in the OAR that you were reading from. And so there is... With respect to whether they have to be employees, I have to admit that is not something that I looked at carefully and not something that I discussed with my client. And the reason the latter point is important is that under Oregon law, not surprisingly, the agencies that promulgate regulations are given deference in interpretation of those regulations. And so without having discussed with the commissioner or the head of the Apprenticeship Training Council how they interpret that regulation, I'm afraid I'm not prepared to give a good response to that question. I would be happy to submit a memorandum on that point if your honors would like to have one. I don't intend to go through the step-by-step analysis because I think it's set forth fairly clearly in the briefs. In sum, ERISA preemption is triggered if a state law either makes reference to or ERISA plans or has a connection with ERISA plans. I will say that particularly in the reply brief, plaintiffs make it fairly plain that their connection with argument is pretty derivative of their makes reference to argument. When they discuss the ways in which the necessary and needed rules have a connection with ERISA plans, it's all premised on the assumption that all local joint committees in Oregon are ERISA plans. And if that's true, you don't need to get as far as the connection with PRONG. You still are at the makes reference to PRONG. So I think that's where this case really rests is on whether Oregon's requirement that some employees or employee representatives participate on local joint committees is enough to trigger ERISA coverage. And it is our position, obviously, that it is not. The separate funding requirement comes from the Labor Relations Management Act and prohibits payments from employers only to any representative of an employer's employees or any labor organization. In the red brief, I've gone through in some detail technical reasons why a local joint committee is not a labor organization. And I won't repeat those here. I think it's sufficient sort of, again, to draw back and recall that there are both employer people and employee people on these committees. Just given their very nature, they are not labor organizations in terms of the And it's not clear whether it has to be only employees who participate. And that's why in electromation in the 802 cases, there is a possibility in electromation that this committee in which employees and employers, employer management people were participating with each other, was a labor organization, I guess is what the ruling was under 802. Then the question was, were these employees acting in a representative capacity, which I think is ultimately the question. And there they said they were, and here it seems the indices that they used there probably weren't. But that's a different issue than whether it was a labor organization. And it may be because in the electromation case, just the way the committee was formed, the negotiations, the dealing with that has to happen for something to be a labor organization. The way it was structured in that case, it happened within the committee. And that of course, one thing that's true here is that the one thing that the skilled practitioner, that the employer representative can't be is an apprentice, right? So in terms of dealing with the employer on behalf of the employees that are at stake here, or the apprentices, that's something they're not doing. That is correct, and that's also the point that I tried to make in that any concern about money flow through, although the local joint committees in Oregon, they're not set up to be the money managing program. Even if they were, the money would not be flowing to the people who benefit from the programs in the same way that labor unions and their representatives on, who engage in negotiations or collective bargaining with employers are. And so there aren't the same concerns about collusion and corruption that gave rise to the LMRA requirement that there be the separate funding of these sorts of trusts. I also want to point out that in the reply brief, plaintiffs rely for the first time on definitions from ERISA respecting... That ultimately doesn't go any places, I understand, because you first have to get a funding requirement from someplace. But there's no funding requirement, and we know that the facts here are that a lot of them weren't funded, and what the ERISA scheme might call an employee organization or not call an employee organization doesn't matter. The only reason it matters is if it plugs into the LMRA. That's correct, Your Honor, and in addition, those definitions mirror each other anyway, and under the ERISA definitions, these, the committees would not be labor organizations for the same reason, or employee organizations for the same reason. They're not labor organizations under the LMRA. They simply don't deal with or negotiate with employers in the way that's contemplated by those statutes. The final point I'd like to make is that even if inclusion of employees on, in the local joint committees were enough to trigger ERISA coverage, the savings clause would kick in in this case. As this Court said in Nunn, the purpose of the Fitzgerald Act would be thwarted if ERISA preemption operated so as to invalidate state apprenticeship training standards. The Fitzgerald Act contemplates that states will continue to regulate in the area of apprenticeship training and if this Court were to hold that the mere fact that some employees or skilled trade practitioners participate on the local joint committees mean that Oregon's state apprenticeship regulations go out the window, that would not be consonant with the Fitzgerald Act, and therefore the savings clause applies. Thank you. If you'd like, we'll give you a minute. You don't need it, but if you... I'd say one thing, Your Honor, which relates to the dealing with requirement, and I just wanted to clarify that regarding the dealing with requirement, I think it's clear that dealing with in the sense of bargaining is a lower limit. In other words, if you do that, then if you bargain with, then you deal with. If you determine, though, you deal with two, just like I might say to my assistant, I'll deal with that in terms of take care of it when I get back to the office. And there's no case that says if you are making determinations regarding the factors rather than bargaining regarding the factors that you're not dealing with. With that, I have nothing else, Your Honor. Presumably the beneficiaries here are the apprentices, right? I guess that's what... I was always wondering about that, but I guess it's that the beneficiaries of the apprentice plan are the apprentices, not the other employees. Not the other employees, not the journey person employees, but the apprentices. They're the ones who are getting something from the plan. They're getting training and they're getting something which is coming out of the fund. If there is a fund, or not coming out of the fund, if there is a fund. But the people on this committee are not representatives of those employees. One thing they can't be is apprentices, right? Well, I don't think being representatives of apprentices means that they are themselves apprentices. That means that they are... A labor organization is a representative of employees if it deals with employers regarding those certain factors of employment, like wages, like working conditions, and so on and so forth. So they don't need to be the same class of employees or anything like that. I mean, I think maybe another issue that you're raising there is what of value are the employers giving the labor organizations or giving the employee representatives? And there's two things. To the individual employee representatives, they're giving them a position on this committee. Whether that's something of value or not, I don't know, but if you... Well, that's not the way it seems to be seen. It's not that they're giving them that. This is a joint committee, and jointly together they have a position. Well, and in any event, though, Your Honor, what the employers do by statute have to give the JATC is the funds and equipment, depending on the nature of the committee, to run itself. So that's the sense in which they sponsor them. So if the JATCs are labor organizations, and thus representatives of employees, it's certain that representatives of employees are getting something of value from their employers. Thank you, counsel. Thank you. Case just argued will be submitted. The Court will adjourn for the day. Ms. Clark, this session stands adjourned. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Reinhardt, Berzon, Bybee